**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RODNEY TYREAL WHEELER,**

     **Petitioner,**

     **vs.**

                               **Civil action no. 3:10cv13**
                                     **Criminal action no. 3:07cr70-3**
                                     **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

     **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On March 3, 2010, petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with an attached memorandum in support (Dkt.# 240 and 240-1), along with a motion for an extension of time in which to file a [presumably further] memorandum in support. (Dkt.# 242).  Petitioner's request for an extension of time in which to file his additional memorandum was granted by Order entered on March 8, 2010. (Dkt.# 245).  On March 22, 2010, petitioner filed a motion to amend his § 2255 petition, including within his motion an additional claim.  (Dkt.# 248); that motion was granted by Order entered March 23, 2010. (Dkt.# 250). On May 14, 2010, petitioner finally filed his memorandum in support. (Dkt.# 256).  On May 17, 2010, the Government was directed to respond (Dkt.# 260).  After the Government's June 3, 2010 motion for an extension of time (Dkt.# 262) was granted by Order entered on June 7, 2010 (Dkt.# 263), the Government filed its response on August 24, 2010.  (Dkt.# 265).  Petitioner's September 2, 2010 motion requesting an extension of time in which to reply (Dkt.# 266) was granted by Order entered on September 7, 2010.  (Dkt.# 268).  Petitioner replied on December 8, 2010. (Dkt.# 270).

## II. Facts

### A. Conviction and Sentence

On March 7, 2008, after a two-day trial, petitioner was convicted of Count One, conspiracy to possess with intent to distribute in excess of fifty grams or more of cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A); Count Two, distribution of a mixture or substance containing approximately 0.14 grams of cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. §2; Count Three, distribution of a mixture or substance containing approximately 1.83 grams of cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Count Four, possession with intent to distribute a mixture or substance containing approximately 53.7 grams of cocaine hydrochloride, also known as "coke," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On May 21, 2008, petitioner was sentenced to three hundred sixty months (360) imprisonment on Counts Two, Three and Four, and to life imprisonment on Count One, all to run concurrently, to be followed by six (6) years supervised release on Counts Two, Three and Four, to run concurrently. (Dkt.# 202).

### B. Direct Appeal

On May 23, 2008, after his March 11, 2008 motion for acquittal (Dkt.# 184) and his March 11, 2008 motion for a new trial were denied by Orders entered on March 17, 2008 (Dkt.# 187) and April 9, 2008 (Dkt.# 198), respectively, petitioner filed a notice of appeal. (Dkt.# 209).

On appeal, petitioner contended that:

1) the District Court erred in denying his motion to suppress the evidence resulting from the initial police stop, because it was not supported by reasonable suspicion;

2) the District Court erred by denying his motion for a mistrial because the District Court

improperly admitted irrelevant and unfairly prejudicial 404(B) evidence of his prior arrest record;

3) his mandatory life sentence pursuant to 21 U.S.C. § 841(B)(1)(A) was not proportional to the offense conduct; and

4) the imposition of his life sentence was erroneous, because the Government failed to meet the notice requirements of 21 U.S.C. § 851.

On December 1, 2008, the judgment of the District Court was affirmed by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 234). Mandate issued on December 23, 2008. (Dkt.# 236). Petitioner did not file a motion for rehearing or petition for a writ of *certiorari* with the United States Supreme Court.

## C. Federal Habeas Corpus

## Petitioners' Contentions (Dkt.# 240, 240-1, 248 and 256)

In his federal habeas petition, the Petitioner raises the following issues, reordered here for clarity and expediency:

1) The Magistrate Judge failed to explain to him that he had a right to a speedy trial and conflict-free counsel.

2) He was constructively denied counsel at a critical stage in his defense when he relinquished his right to a speedy trial.

3) The Magistrate Judge failed to explain the substance of speedy trial right that he was relinquishing;

4) The District Court abused its discretion when it failed to provide him with new trial counsel because it erroneously believed he had fired three previous attorneys, forcing him to proceed to trial represented by counsel with whom he had a conflict.

5) The District Court failed to explain to him that he had the right to represent himself.

6) He was denied the right to self-representation.

7) The District Court abused its discretion when it admitted a lab report into evidence in violation of the hearsay rule.

8) Trial counsel was ineffective for

    a) failing to file a pretrial motion to have the indictment dismissed;

    b) failing to file a pretrial motion to have Counts Two and Three dismissed on the grounds that they were duplicitous;

    c) failing to discuss the facts of the arrest with petitioner and failing to call him as a witness at the suppression hearing;

    d) misleading petitioner into relinquishing his right to a speedy trial;

    e) failing to object to the fact that the venire panel was not drawn from a fair cross-section of the community, because African-Americans were systematically under-represented in the jury pool;

    f) failing to raise a <u>Batson</u>[1] challenge to the prosecutor's striking one of the only two African-Americans in the jury pool, thereby preserving the issue for appeal;

    g) failing to file a proper motion to disqualify himself from representation once a complete breakdown in communication occurred;

    h) failing to explain to petitioner his option for self-representation;

    i) not preserving as grounds for appeal a lab report admitted into evidence in violation of the hearsay rule;

    j) failing to object to the witness Kevin Miller's testimony vouching for and bolstering the witness Katina Butts' testimony;

    k) failing to argue in detail that the evidence was insufficient to convict petitioner on Count Two;

    l) failing to call petitioner to testify at trial after petitioner indicated he had changed his mind about testifying;

    m) failing to object to numerous improper comments, vouching and misstating of the record in the Government's closing argument;

    n) failing to request that the Court provide a curative instruction for the use of closed captioning appearing in a videotape;

---

[1] <u>Batson v. Kentucky</u>, 476 U.S. 79; 106 S. Ct. 1712; 90 L. Ed. 2d 69 (1986).

o) failing to object to the Government's failure to properly serve petitioner with the § 851 notice, because it was filed electronically without petitioner's written consent;

p) failing to correct perjured testimony by two Government witnesses about a photo of petitioner;

q) failing to challenge the impermissibly suggestive single-photo identification of defendant by the witness Katina Butts.

9) Appellate counsel was ineffective for

a) failing to raise as grounds for appeal the Magistrate Judge's failure to explain to petitioner his right to a speedy trial and conflict-free counsel;

b) failing to raise as grounds for appeal petitioner's constructively denial of counsel at a critical stage in his defense when he relinquished his right to a speedy trial;

c) failing to raise as grounds for appeal the Magistrate Judge's failure to explain the substance of speedy trial right petitioner was relinquishing;

d) failing to raise as grounds for appeal the District Court's abuse of discretion in failing to provide petitioner with new trial counsel, because of its erroneous belief that he had fired three previous attorneys, forcing him to proceed with counsel with whom he had a conflict;

e) failing to raise as grounds for appeal the District Court's failure to explain to petitioner that he had the right to represent himself;

f) failing to raise as grounds for appeal the denial of petitioner's right to self-representation;

g) failing to raise as grounds for appeal the District Court's abuse of discretion in admitting a lab report in violation of the hearsay rule;

h) failing to raise as grounds for appeal trial counsel's ineffectiveness in failing to file a pretrial motion to have the indictment dismissed;

i) failing to raise as grounds for appeal trial counsel's ineffectiveness in failing to file a pretrial motion to have Counts Two and Three dismissed on the grounds that they were duplicitous;

j) failing to raise as grounds for appeal the fact that petitioner's waiver of his right to a speedy trial was obtained involuntarily, unknowingly and unintelligently;

k) failing to raise as grounds for appeal the fact that trial counsel was ineffective for not objecting to the racial imbalance of the petit jury venire;

l) failing to raise as grounds for appeal trial counsel's ineffectiveness in failing to raise a <u>Batson</u> challenge to the prosecutor's striking one of the only two African-American potential jurors and preserving the issue for appeal;

m) failing to raise as grounds for appeal trial counsel's ineffectiveness in his complete breakdown in communication with petitioner;

n) failing to raise as grounds for appeal trial counsel's ineffectiveness in not preserving as an issue for appeal the District Court's abuse of discretion in admitting the lab report in violation of the hearsay rule;

o) failing to raise as grounds for appeal trial counsel's ineffectiveness in failing to object when Kevin Miller's testimony vouched for and bolstered the witness Katina Butts' testimony;

p) failing to raise as grounds for appeal trial counsel's ineffectiveness in failing to argue in detail that there was insufficient evidence to convict petitioner on Count Two;

q) failing to raise as grounds for appeal trial counsel's ineffectiveness for failing to object to numerous improper comments, vouching and misstating of the record in the Government's closing argument;

r) failing to raise as grounds for appeal trial counsel's ineffectiveness for failing to request that the Court provide a curative instruction for the use of closed captioning appearing in a videotape;

s) failing to raise as grounds for appeal trial counsel's ineffectiveness for failing to object to the Government's failure to properly serve petitioner with the § 851 notice, which was filed electronically without petitioner's written consent;

t) failing to raise as grounds for appeal trial counsel's ineffectiveness in failing to challenge petitioner's impermissibly suggestive single-photo identification by the witness Katina Butts.

10)     The number of errors that occurred tainted petitioner's defense, such that the pretrial, trial and appellate proceedings were rendered fundamentally unfair.

As relief, petitioner requests that "[r]ather [than] guessing at these potential inconsistencies, it is better it be resolved after an evidentiary hearing which all involved testify under oath and

subject to cross examination." (Dkt.# 256 at 8).

**Government's Response (Dkt.# 265)**

1) All of petitioner's claims of error by the Magistrate Judge or the District Court (Grounds One - Seven) are waived, because they should have been raised on direct appeal. Petitioner has not demonstrated cause or actual prejudice for not so raising them, nor has he shown actual innocence. Furthermore, none of the claims have factual or legal support and all are insufficiently pled.

2) Petitioner has produced nothing to show, nor is there anything in the record to support his many claims of ineffective assistance of counsel against any of the attorneys who participated in his defense. To the contrary, the record clearly demonstrates that each of his attorneys rendered effective assistance. Furthermore, petitioner has failed to show how he was prejudiced by his attorneys' alleged actions, nor has he shown how their representation rendered the results of the proceeding fundamentally unfair. Therefore, petitioner has failed in his burden under Strickland.

3) The *original* indictment was properly returned, bears the signatures of the grand jury foreperson and the U.S. Attorney, and is maintained in the Court's Clerk's office. Under the practice of this district, the "public" *copy* of the indictment does not bear the actual signatures, but rather the "/s/" representations of their signatures. Accordingly, any effort by trial counsel to have the indictment dismissed on the grounds alleged by petitioner would have been frivolous. For the same reason, appellate counsel would have no reason to raise this issue on appeal. Furthermore, claims of ineffective assistance of counsel are not generally cognizable on direct appeal.

4) Because Counts 2 and 3 were two separate and distinct offenses, any attempt by counsel to have them dismissed as duplicitous would have been frivolous: they did not constitute "the joining in a single count of two or more distinct and separate offenses" as defined by U.S. v. Hawkes, 753 F.2d 355, 357 (4th Cir. 1985). Likewise, appellate counsel would have had no reason to raise this issue on appeal. Again, claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

5) Petitioner's claim that trial counsel was ineffective for misleading him into relinquishing his right to a speedy trial is insufficiently pled. He has not shown that even if his speedy trial right was violated, he suffered any prejudice. Furthermore, none of the delay was caused by prosecutorial misconduct or neglect. Much of the delay was excludable time, engendered by the repeated need for counsel to be replaced;[2] the litigation of petitioner's motions to suppress evidence and identification; the return of a superseding indictment. It would not have been inappropriate for counsel to advise petitioner to waive his rights under the Speedy Trial Act under the circumstances. For these same

---

[2] Petitioner had four different attorneys throughout the course of his defense, and a fifth for his appeal. Trial counsel, in order of representation, were: Aaron Amore (represented him for one month and then withdrew because of a conflict), Lary D. Garrett (only represented him for one day; withdrew because of a conflict); Robert Stone (withdrew after 2 ½ months because of a "complete breakdown in communication"), and James Zimarowski (actual trial counsel, who petitioner attempted to have removed on the morning of trial). Appellate counsel was Troy Giatras.

reasons, appellate counsel would have had no reason to raise this issue on appeal. Ineffective assistance of counsel claims are generally not cognizable on direct appeal.

6) Petitioner's claim that trial counsel was ineffective for failing to object to African-Americans being systematically unrepresented in the jury pool has no merit. Likewise, his claim that appellate counsel was ineffective for not raising the issue on appeal also lacks merit. Further, as noted *supra,* ineffective assistance of counsel claims are generally not cognizable on direct appeal.

7) Petitioner's claim that trial counsel was ineffective for failing to raise a <u>Batson</u> challenge when the Government peremptorily struck one of two African-American jurors fails, because the Government had several race neutral reasons for striking the juror. Similarly, appellate counsel's failure to raise it as an issue for appeal fails because since there was no challenge in the trial record, there was no <u>Batson</u> issue to raise. Again, as noted *supra,* ineffective assistance of counsel claims are generally not cognizable on direct appeal. Petitioner cannot show that either trial or appellate counsel's performances were deficient, or that there is a reasonable probability that but for counsel's failures, the results of the proceeding would have been different.

8) Petitioner's claim that unspecified trial counsel was ineffective for failing to file a 'proper' motion to disqualify himself because of a complete breakdown in communication is fatuous, without merit, and insufficiently pled.

9) Petitioner's claim that the District Court abused its discretion by not providing him new counsel, thereby denying him his right to conflict-free counsel has no merit and is insufficiently-pled. For the same reasons, appellate counsel would have had no reason to raise this issue on appeal; the issue was not preserved below for appeal; and claims of ineffective assistance of counsel are generally not cognizable on direct appeal. Finally petitioner has not shown that appellate counsel's performance was deficient, or that but for his failure to raise this issue, the results of the proceeding would have been any different.

10) Petitioner's claim that appellate counsel was ineffective for failing to raise as grounds for appeal trial counsel's ineffectiveness due to a complete breakdown in communication fails, because claims of ineffective assistance of counsel are generally not cognizable on direct appeal. Petitioner has not shown that appellate counsel's performance was deficient or that there is a reasonable probability that but for counsel's failure, the results of the proceeding would have been different.

11) Petitioner's claim that he was denied the option of self-representation suggested by the Government, and his claims that the District Court and trial counsel both failed to explain this right to him lack merit. Petitioner never once expressed any interest representing himself and has not cited to any legal authority establishing any duty of counsel or the Court to advise him of such a right. Further, he has not shown that even had he been so advised, he would have been acquitted on one or more of the charges, thus he has not shown prejudice. He has not shown that the Court abused its discretion in this regard, nor has he demonstrated that counsel was deficient, or that there

was a reasonable probability that but for counsel's failure, the results of the proceeding would have been different.

12) Petitioner's claim that the District Court abused its discretion by admitting a lab report into evidence in violation of the hearsay rule, and that trial counsel was ineffective for not properly supplementing the record for appellate purposes has no merit and is insufficiently pled. Further, counsel did object to the admission of several lab reports, which were properly admitted as exceptions to the hearsay rule. Petitioner has not shown that the District Court abused its discretion. Appellate counsel would have had no reason to raise the issue on appeal; furthermore, claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

13) Petitioner's claim that counsel failed to object to Kevin Miller's testimony is insufficiently pled. Counsel did object to the testimony as being hearsay, and a qualifying instruction was given to the jury regarding the purpose of the testimony. Petitioner has not shown that counsel was deficient, or that there is a reasonable probability that but for counsel's failure, the results of the proceeding would have been different. Moreover, appellate counsel would have had no reason to raise the issue on appeal; claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

14) Petitioner's claim that trial counsel was ineffective for failing to argue in detail that the evidence on Count Two was insufficient to convict him lacks merit and is insufficiently pled. Petitioner has not shown that counsel was deficient, or that there was a reasonable probability that but for counsel's failure, the results of the proceeding would have been different. Moreover, appellate counsel would have had no reason to raise the issue on appeal; claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

15) Petitioner's claim that trial counsel was ineffective for failing to call him to testify at trial lacks merit and contradicts his own statements to the Court at trial as to whether he wanted to testify. He has not explained what his testimony would have been had he testified, or how it would have been credible enough to change the outcome of the trial. He has not shown that counsel was deficient, or that there was a reasonable probability that but for counsel's failure, the results of the proceeding would have been different.

16) All of the many improper comments, vouching and mis-stating of the evidence by the Government in its closing argument that petitioner alleges trial counsel was ineffective for failing to object to were mere argument, supported by evidence offered at trial and/or were reasonable inferences drawn from such evidence. Accordingly, there was no basis on which counsel could have objected. This claim is insufficiently pled and has no merit. Petitioner has neither shown that counsel was deficient, or that there is a reasonable probability that but for counsel's failure, the results of the proceeding would have been different. Moreover, for the same reasons, appellate counsel would have had no reason to raise these issues on appeal; claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

17) The Government agrees with petitioner that trial counsel Zimarowski did not object to

the use of the video and audio tapes with "closed captioning" provided by the Government, nor did trial counsel object or request that the Court provide a curative instruction for the use of the "closed captioning" with the tapes. However, previous counsel Stone did object at the pretrial hearing. The Court's failure to provide the instruction was an oversight, because it had already ruled that it would do so. Evidence at trial corroborated the accuracy of the recordings. Petitioner's claim fails because he has not shown that the transcripts incorrectly depicted the communications. Further, he has not shown how he was prejudiced, and thus he has not met his burden under Strickland. For the same reasons, appellate counsel had no reason to raise this issue on appeal. Moreover, claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

17) Petitioner's next claim, that trial counsel Zimarowski was ineffective for failing to object to the Government's failure to "properly" serve him with notice of its intention to rely on his prior convictions under 21 U.S.C. § 851, because it was filed electronically without defendant's written consent, is nonsense. The § 851 notice was properly served electronically on defense counsel, in accordance with the applicable rules. Petitioner has not shown that either counsel's performance was deficient or that there was a reasonable probability that but for counsels' failure, the results of the proceeding would have been different. Petitioner's related claim, that appellate counsel was ineffective for failing to raise this issue as grounds for appeal fails for the same reasons. Further, claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

18) Petitioner's claim that trial counsel (Stone and then Zimarowski) were ineffective for failing to challenge the impermissibly suggestive single-photo identification of defendant by the witness Katina Butts has no merit. Contrary to petitioner's claim, trial counsel Stone did file a motion to suppress pretrial identification and a hearing was held on the issue. Petitioner is again mis-stating the facts; the photo album was not a 'single-photo" identification; it was 250 photographs of men and women of several races depicted in an unsuggestive manner. Furthermore, not only was the issue raised before trial in a suppression hearing, but it was also pursued at trial. Petitioner's related claim, that appellate counsel was ineffective for failing to pursue this issue on appeal, also fails for the same reasons. Furthermore, claims of ineffective assistance of counsel are generally not cognizable on direct appeal.

The Government has requested specific responses from each of petitioner's counsel but all declined to provide them due to ethical considerations. Petitioner has not demonstrated the necessity for an evidentiary hearing, and it would be unfair to petitioner's numerous counsel, and given their lack of proximity to the Court, a burden to the taxpayers to require the production of their testimony on the basis of such baseless allegations. However, if the Court wishes, the Government would request that such an evidentiary hearing be scheduled. The Government moves that petitioner's § 2255 motion be denied and dismissed.

**Petitioner's Reply (Dkt.# 246)**

In his forty-page reply, Petitioner reiterates the claims previously made in his § 2255 motion, attempts to refute the Government's position on the same, contending that ineffective assistance of counsel is apparent on the record. He asks that the Court grant his habeas corpus petition in its entirety, or alternatively, that it grant him an evidentiary hearing.

### III. Analysis

**A. Petitioner's Burden of Proof**

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

**B. Procedurally Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred. It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may not be raised in a collateral attack such as a § 2255 motion. (emphasis added) Sunal v. Large, 332 U.S. 174, 178-79 (1947). This is because "a final judgment commands respect," such that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Examples of such procedurally defaulted" issues include, generally, errors of law committed

by the trial court and specifically, "the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trail, and other erros in trial procedure which do not cross the jurisdictional line." Sunal, 332 U.S. at 179.

In contrast to non-constitutional issues, constitutional errors that were capable of being raised on direct appeal but were not, may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. (emphasis added) United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. In establishing "prejudice," the petitioner must show the error worked to his "actual and substantial disadvantage," rather than merely created a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In the alternative to establishing "cause" and "prejudice," the petitioner may demonstrate "actual innocence," or that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 621 (1998). "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence."

Mikalajunas,186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995). Should a petitioner prove actual innocence, the court should issue a writ of habeas corpus to prevent a "miscarriage of justice," regardless of whether the issue was procedurally defaulted. Hurdle v. United States, 2007 U.S. Dist. LEXIS 37709, at *6-7 (E.D. Va. May 22, 2007) (relying on Schlup v. Delo, 513 U.S. 298 (1995). Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

Accordingly, the undersigned finds that petitioner's Ground Eight (o) and Nine (l) claims[3], in addition to being completely without support in fact or law, are procedurally barred because they were already raised on appeal, albeit couched as a claim that the imposition of his life sentence was erroneous, because the Government failed to meet the notice requirements of 21 U.S.C. § 851. Further, the undersigned concludes that petitioner's Ground One, Two, Three, Four, Five, Six, Seven and Ten claims[4] are all procedurally defaulted, because they could have been, but were not

---

[3] Petitioner's Ground Eight (o) claim is that trial counsel was ineffective for failing to object to the Government's improperly serving him with the § 851 notice, because it was filed electronically without his written consent, and his Ground Nine (l) claim is that appellate counsel was likewise ineffective for failing to raise trial counsel's ineffectiveness in this regard as grounds for appeal.

[4] Petitioner's Ground One claim is that the Magistrate Judge failed to explain to that he had a right to a speedy trial and conflict-free counsel; his Ground Two claim is that he was constructively denied counsel at a critical stage in his defense when he relinquished his right to a speedy trial; his Ground Three claim is that the Magistrate Judge failed to explain the speedy trial right that he was relinquishing; his Ground Four claim is that the District Court abused its discretion when it failed to provide him with new counsel on the erroneous belief that he had fired three previous attorneys, forcing him to proceed with counsel with whom he had a conflict; his Ground Five claim is that the District Court failed to explain to him that he had the right to represent himself; his Ground Six claim is that he was denied the right to self-representation; his Ground Seven claim is that the District Court abused its discretion when it admitted a lab report under the hearsay rule; and his Ground Ten claim is that cumulative error in the

raised on appeal, unless the petitioner can show cause and prejudice for the default. In his § 2255 petition, petitioner asserts that he did not raise Grounds One - Seven on appeal because appellate counsel was ineffective for not doing so. Petitioner asserts no cause for not raising Ground Ten on appeal, therefore, it is procedurally defaulted. Accordingly, it is necessary to review Grounds One through Seven along with each of petitioner's remaining claims, to determine whether cause exists for not raising them on direct appeal, and if petitioner was prejudiced by appellate counsel's alleged failure to raise them.

**Grounds One, Two and Three: Whether the Magistrate Judge Failed to Explain Petitioner's Rights to a Speedy Trial and Conflict-Free Counsel, Failed to Explain the Substance of the Speedy Trial Right Petitioner was Relinquishing, and Whether Petitioner Was Constructively Denied Counsel at a Critical State in his Defense when he Relinquished his Right to a Speedy Trial.**

These claims, being so interrelated, are combined here for expediency. Petitioner alleges that his Sixth Amendment right to counsel was violated when he was constructively denied counsel at a critical stage in his defense on January 28, 2008 [sic],[5] the day before trial was originally scheduled, when his previous trial counsel [Attorney Stone] indicated to the Court that he and petitioner had had a "complete breakdown in communication." Because petitioner was asked to waive his right to a speedy trial in order to permit Stone to be replaced by a new attorney, petitioner now asserts that his speedy trial right was violated. Further, he alleges, the Magistrate Judge did not explain his rights to him.

Before addressing the merits of petitioner's claims, the undersigned first examines whether

---

pretrial, trial and appellate proceedings rendered them fundamentally unfair.

[5] The events complained of actually occurred on January 7, 2008, at a plea hearing that was converted to a status conference when petitioner changed his mind about pleading to the indictment. Petitioner's trial was originally scheduled for January 8, 2008 but at the January 7, 2008 hearing, it was rescheduled for March 4, 2008.

petitioner has made the required "cause" and "prejudice" showing as to why he failed to raise these constitutional issues on direct appeal and how he was prejudiced thereby. See Maybeck, 23 F.3d at 891. As to the required "cause," showing, petitioner contends that these issues were not raised on direct appeal because of appellate counsel's ineffectiveness. In examining a similar claim of "cause" in a state petitioner's federal habeas petition, the U.S. Supreme Court recently held in Edwards v. Carpenter, 529 U.S. 446, 450 - 51, 120 S.Ct. 1587, 146 L. Ed. 2d 518 (2000), that such a claim will not suffice for "cause" unless the petitioner can show "cause" and "prejudice" for failing to raise the ineffective assistance of counsel claim itself. Here, petitioner has made no such showing. Accordingly, this Court finds the "cause" requirement has not been met. As to the required "prejudice" showing, *viz.*, that petitioner was actually and substantially disadvantaged as opposed to merely made susceptible to a possibility of prejudice, see Satcher v. Pruett, 126 F.3d at 572, this Court finds that being deprived of one's Sixth Amendment rights to counsel and a speedy trial, if true, exposes petitioner to a substantial disadvantage.

Assuming petitioner met both the "cause" and "prejudice" requirements, the Court turns to the merits of petitioner's claims. A criminal defendant's right under the Speedy Trial Act (the "Act"), codified at 18 U.S.C §§ 3161 - 3174 (2006) is separate and distinct from his Sixth Amendment right to a speedy trial. See U.S. v. Woolfolk, 399 F.3d 590, 594 - 98 (4th Cir. 2005). Four factors determine whether a Sixth Amendment speedy trial right has been violated: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial; and 4) the extent of prejudice to a defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972). Under the Act, a defendant charged with a felony must be brought to trial within seventy days of the later of his indictment or his initial appearance before a judicial officer.

18 U.S.C. § 3161(c)(1). If a violation of the Act occurs, the indictment must be dismissed upon motion by counsel, albeit with the trial court's discretion in deciding whether the dismissal is with or without prejudice. 18 U.S.C. § 3162(a)(2). However, neither type of dismissal is "the presumptive remedy for a Speedy Trial Act violation." U.S. v. Taylor, 487 U.S. 326, 3334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). Whether the dismissal is with or without prejudice is decided upon consideration of "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Further, but not dispositive, "the presence or absence of prejudice to the defendant" is "relevant for a district court's consideration" and may be considered in conjunction with the impact of reprosecution. Taylor, *supra* at 334 and 341. "While consideration of these factors guides a court's decision to dismiss an indictment with or without prejudice [], these factors are not determinitive in assessing whether there was a violation of the Act." U.S. v. Thomas, 305 Fed. Appx. 960, 5 (2009 WL 20875 (C.A.4 (Md.)), (unpublished) *per curiam*, *quoting* Zedner v. U.S., 547 U.S. 489, 499, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006) and 18 U.S.C. § 3162(a)(2).

Here, the record does not support petitioner's claim. Not only was Attorney Stone not formally relieved of representation until two days *after* the January 7, 2008 hearing in which petitioner waived his right to a speedy trial,[6] the trial was postponed specifically to accommodate petitioner. Petitioner decided one day before trial was originally scheduled that he was not going to enter a plea after all. Attorney Stone advised the Court that: 1) he had not prepared for trial because

---

[6] Attorney Stone filed a motion to withdraw, along with a proposed order on January 9, 2008 and was relieved of representation by Order entered the same day (Dkt.# 135), appointing Attorney James Zimarowski as his new counsel. Petitioner was never left "without counsel at a critical stage" in his defense.

he reasonably relied upon petitioner's stated intention to enter the plea and 2) that he was concerned that there might well be a potential ineffective assistance of counsel claim, in light of the breakdown in the attorney-client relationship. (Dkt.# 218 at 3 - 5). Moreover, petitioner cannot meet the four-factor test set forth in Barker, *supra*, to show that his Sixth Amendment speedy trial right was violated. Although the substitution of Attorney Stone for Zimarowski on the eve of trial caused his trial to be delayed by two months (from January until March 2008), petitioner did not disagree with Attorney Stone's January 7, 2008 characterization to the Court that their relationship had irretrievably broken down; indeed, he admits the same in his § 2255. Petitioner never asserted his right to a speedy trial; to the contrary, when asked if he would waive the right, he readily agreed to do so. (Id. at 6).

Nor can petitioner sustain a claim under the Speedy Trial Act. Petitioner first appeared before the Court on September 12, 2007. On October 12, 2007 his first attorney, Amore, filed a motion to withdraw due to a conflict. New counsel, Attorney Garrett was appointed but immediately realized he had a conflict as well, and so petitioner's third counsel, Attorney Stone was appointed on October 22, 2007, causing more excludable time. Further, petitioner's November 9, 2007 motions to suppress evidence and pretrial identification excluded time until December 28, 2007 when District Court adopted the Magistrate Judge's report and recommendation on them. On January 4, 2008, petitioner filed notice of his intent to plead guilty, garnering more excludable time. (Dkt.# 126). On January 9, 2008, defense counsel Stone moved to withdraw as counsel and Attorney Zimarowski was appointed. On January 22, 2008, a superseding indictment was returned, adding the conspiracy charge (Dkt.# 138), further excludable time. On February 8, 2008, defendant was arraigned on the superseding indictment and Speedy Trial time began as to the new count. On March 6, 2008, the jury was

impaneled.

Although approximately seven months passed between defendant's initial appearance on the original indictment and his trial on the superseding indictment, during that time there were four counsel changes, two motions to suppress and a new indictment returned. Petitioner has not shown that it was inappropriate for him to have waived his rights under the Act or for counsel to forgo seeking a dismissal pursuant to it under the circumstances. Insistence on a speedy trial would have meant preparing for trial overnight, impossible for both Attorney Stone and any newly-appointed counsel. Petitioner readily admits that there was a complete breakdown of communication between himself and Attorney Stone; clearly proceeding to a speedy trial with Attorney Stone would have not been in his best interests. Furthermore, none of the delays were caused by prosecutorial neglect or misconduct. Even assuming *arguendo,* that counsel had moved to enforce the Act and prevailed, petitioner has not shown that he would have been granted a dismissal *with* prejudice; the Government might merely have re-indicted him. Thus, he cannot show that the results of the proceeding would have been any different. Because he has not shown prejudice, let alone actual innocence, this claim is procedurally barred.

As for petitioner's claim that the Magistrate Judge did not "explain his right to conflict-free counsel," this claim is baseless. It is apparent from the record that immediately upon learning that petitioner and Attorney Stone's relationship had irretrievably broken down on the eve of trial, the Magistrate Judge immediately contacted the District Judge to arrange for appointment of new counsel. Thus, it is clear that the Magistrate Judge was responsive to petitioner's dilemma regarding the conflict with counsel and resolved it appropriately and expeditiously.

Finally, petitioner's claim that the Magistrate Judge did not explain the substance of his rights

under the Speedy Trial Act is procedurally defaulted as well. Petitioner cannot show prejudice and has not even alleged, let alone shown actual innocence.

**Grounds Four, Five and Six: Whether the District Court Abused its Discretion when it Failed to Provide Petitioner With New Trial Counsel Because it Erroneously Believed he had Fired Three Previous Attorneys, Failed to Explain to Petitioner His Right to Self-Representation, and Whether Petitioner was Denied the Right of Self-Representation**.

These claims, because they are so inter-related, have also been combined for expediency.

Petitioner argues that the Court abused its discretion by not appointing new counsel on the morning of trial when he attempted to have his fourth court-appointed attorney, Zimarowski, removed. He alleges that the Court's decision was based on its erroneous belief that he had fired three previous attorneys. Further, he argues, the Court failed to explain to him that he had a right to represent himself. Finally, he contends that he was denied the right to self-representation.

Again, as with Grounds One, Two and Three, *supra,* petitioner has failed to make the required "cause," showing set forth in Edwards v. Carpenter, 529 U.S. at 450 - 51. Again, as to the required "prejudice" showing, *viz.*, that petitioner was actually and substantially disadvantaged as opposed to merely made susceptible to a possibility of prejudice, this Court finds that being deprived of one's Sixth Amendment rights to counsel and to self-representation, if true, exposes petitioner to a substantial disadvantage.

Assuming petitioner met both the "cause" and "prejudice" requirements, the Court examines the merits of petitioner's claims. The Sixth Amendment grants the right to counsel while the implied right to self-representation is defined in Faretta v. California, 422 U.S. 806 (1975). The Sixth Amendment requires that a defendant who cannot afford private representation, who faces potential incarceration upon conviction be provided counsel. Id. at 806. However, a defendant may also waive that right, as long as his waiver is knowing, intelligent, and voluntary. Id. at 814. Despite that, courts

must take care not to force counsel upon a defendant, because in addition to the right to the assistance of counsel, the Sixth Amendment also implicitly provides an affirmative right to self-representation. Id. And that right must be preserved even if the court believes that the defendant would benefit from the advice of counsel. Id. at 834. In order to preserve both rights, a trial court must proceed with care in evaluating a defendant's expressed desire to forgo the representation of counsel and conduct his own defense. United States v. Singleton, 107 F.3d 1091, 1095 -1096 (4th Cir. 1997).

A review of the record indicates that although the Court did mis-state slightly on the morning of trial when Attorney Zimarowski conveyed petitioner's request that he withdraw, when it indicated that Attorney Amore had also withdrawn at petitioner's suggestion.[7] (Dkt.# 221 at 9 - 10), it never indicated that it believed that petitioner had fired three previous attorneys, only its belief that two prior attorneys had been removed at petitioner's request. However, here, petitioner "never clearly and unequivocally asserted his desire to represent himself." Faretta, supra at 821. Indeed, the only reference at trial to *pro se* representation at all was a single comment, made by the United States, in response to petitioner's comments that he was unhappy with Mr. Zimarowski's representation:

> So, to the extent that Mr. Wheeler has expressed these concerns, I don't think he's articulated specific concerns. Just gross generalizations as to not being satisfied with general areas. But we have no objection to defendant representing himself since he wants to fire present counsel, and we can proceed with the trial with Mr. Wheeler representing himself.

(Dkt.# 221 at 8 - 9).

Petitioner made no comment when this offer was made. He did not express any interest in proceeding *pro se*. In United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000), the Fourth Circuit Court of Appeals held that a District Court may grant a defendant's request to represent

---

[7] Mr. Amore actually withdrew because of a conflict.

himself if the request is (1) timely, (2) clear and unequivocal, and (3) knowing, intelligent, and voluntary. The requirement that the assertion be clear and unequivocal "is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings," and it also precludes a defendant's "taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." Frazier-El, *supra* at 559. A District Court faced with a request for self-representation should inquire into "the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation," but the failure to conduct a formal inquiry is not *per se* reversible error. U.S. v. Singleton, 107 F.3d 1091, 1098 (4th Cir. 1997). The Fourth Circuit has also noted that "the Faretta right to self-representation is not absolute," and the 'government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'" U.S. v. Bush, 404 F.3d 263, 271 - 272 (4th Cir. 2005), *quoting* Martinez v. Court of Appeal, 528 U.S. 152, 160, 145 L. Ed. 2d 597, 120 S. Ct. 684 (2000)).

Here, because petitioner never once indicated any interest in proceeding *pro se* at trial, he cannot now credibly maintain that he was denied the right of self representation or that either the Court or counsel had any duty to advise him of his right to proceed *pro se.* Furthermore, petitioner has neither demonstrated that the District Court abused its discretion, nor can he prove prejudice; he has not shown that even if he had been so advised, he could have won an acquittal on any of the charges.

**Ground Seven: Whether the District Court Abused its Discretion when it Admitted a Lab Report Into Evidence in Violation of the Hearsay Rule**

Petitioner contends, without elaboration, that at trial, the District Court abused its discretion when it admitted an unspecified lab report into evidence in violation of the rule against hearsay.

Again, as with Grounds One, Two, Three, Four, Five and Six, *supra,* petitioner has failed to make the required "cause," showing set forth in <u>Edwards v. Carpenter</u>, 529 U.S. at 450 - 51. However, as to the required "prejudice" showing, *viz.*, that petitioner was actually and substantially disadvantaged as opposed to merely made susceptible to a possibility of prejudice, this Court finds that being deprived of one's Fourteenth Amendment right to due process, if true, exposes petitioner to a substantial disadvantage.

Assuming petitioner met both the "cause" and "prejudice" requirements, the Court turns to the merits of petitioner's claims. Rule 803(6) of the Federal Rules of evidence provides an exception to the hearsay rule that is controlling here:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6).

Furthermore, reports that state an expert opinion "are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance." <u>Tokio Marine & Fire Ins. Col, Ltd. v. Norfolk & Western Ry. Co.</u>, 1999 U.S. App. LEXIS 476 (4th Cir. 1999) (unpublished) *per curiam quoting* <u>Forward Communications Corp. v. U.S.</u>, 221 Ct. Cl. 582, 608 F.2d 485, 511 (Ct. Cl. 1979).

Petitioner's claim lacks merit. Although petitioner does not indicate which report he is

referring to, a review of the trial record reveals that several laboratory reports summarizing various expert chemists' examination findings regarding their testing of the drugs seized in the case were introduced into evidence over the objection of counsel. (Dkt.# 221 at 216 - 217). Each of the reports had been identified by its respective author, the chemist who prepared it in the normal course of his or her business. Each chemist appeared at trial, testified was subjected to cross-examination on the report(s); as such, there was no hearsay. Furthermore, this claim is insufficiently pled; petitioner does not even identify which report or reports he believes violated the hearsay rule, or in what way the rule was violated. Habeas petitions must meet heightened pleading requirements. <u>McFarland v. Scott</u>, 512 U.S. 849, 856 (1994). "In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* <u>Yeatts v. Angelone</u>, 166 F.2d 255 (4th Cir. 1999).

**<u>Ground Eight (a)</u>: Whether Trial Counsel was Ineffective for Failing to File a Pretrial Motion to Have the Indictment Dismissed**.

Petitioner contends that trial counsel (presumably Amore, Stone and Zimarowski) were ineffective for not moving to dismiss the indictment and superseding indictments because they: a) were not returned in open court; b) were not signed by the U.S. Attorney or the Grand Jury foreperson; and c) lacked the signature and name of the attorney.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner

demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

This claim has no merit. The original indictment as well as the original superseding indictment were properly returned, bear the signatures of the Grand Jury foreperson and the U.S. Attorney, and are maintained in the Court's Clerk's office. In accordance with the practice in this district, the "public" copy of the indictments does not reveal the actual signatures, but rather, merely the "/s/" representation of them. They were not defective. Accordingly, had any of petitioner's trial counsel moved to dismiss either of them on these grounds, it would have been futile. Counsel is not required to waste the court's time pursuing frivolous legal motions. U.S. v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978). Petitioner has not shown that counsel was ineffective or that he was prejudiced.

**Ground Eight (b): Whether Trial Counsel was Ineffective for Failing to File a Pretrial Motion to Dismiss Counts Two and Three on the Grounds that they were Duplicitous.**

Petitioner alleges that Counts Two and Three of the superseding indictment were duplicitous because both crack distributions charged occurred on the same day, and that trial counsel (presumably Amore, Stone and Zimarowski) were ineffective for failing to move to dismiss them on those grounds.

Duplicity is defined as the joining in a single count of two or more distinct and separate offenses.  U.S. v. Hawkes, 753 F.2d 355, 357 (4th Cir. 1985).

The test to determine whether the same act constitutes two different violations is set forth in Blockburger v. U.S., 284 U.S. 299, 52 S. Ct. 180; 76 L. Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not.

Blockburger, *supra* at 304.

Because Counts Two and Three each required proof of different facts (e.g., the different amounts of crack and the different times the controlled buys occurred), they were separate and distinct violations.  Accordingly, they were appropriately charged as separate violations.  As such, there was no defect with the charges in the indictment, so it would have been futile for counsel to move to dismiss the charges on those grounds. Again, counsel is not required to waste the court's time pursuing frivolous legal motions. Bosch, *supra* at  1121. Petitioner has failed in his burden under Strickland and relief should be denied.

**Ground Eight (c): Whether Trial Counsel was Ineffective for Failing to Discuss the Facts of the Arrest with Petitioner, and Failing to Call him as a Witness at the Suppression Hearing**.

Petitioner, although he does not specify which of his attorneys he is referring to, contends that counsel (presumably Stone, and later Zimarowski)[8] was ineffective for not discussing the facts of his arrest with him, and not calling him to testify at the suppression hearing.

It is true that a criminal defendant has a fundamental constitutional right to testify on his or

---

[8] Attorney Stone was counsel of record at the suppression hearing.  Although petitioner does not identify which attorney he finds fault with, presumably he also faults Attorney Zimarowski for not attempting to renew the suppression motion once he was appointed to replace Stone.

her own behalf at trial.  U.S. v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003).        Further, this right

"reaches beyond the criminal trial."  (Rock v. Arkansas, 483 U.S. 44, 51 n.9 (1987); Reinert v.

Larkins, 379 F.3d 76, 95 (3rd Cir. 2004)(addressing a habeas petitioner's ineffective assistance of

counsel claim that his attorney violated his constitutional right to testify at a pre-trial suppression

hearing).  Moreover, a defendant's waiver of this right, as with every other constitutional right, is

"personal" and must be made voluntarily and knowingly.  See Sexton v. French, 163 F.3d 874, 881

(4th Cir. 1998); Brown v. Artiz, 124 F.3d 73, 77 - 78 (2nd Cir. 1997).

Petitioner attaches an affidavit to his reply, suggesting that the version of events he would

have offered, had he only been permitted to testify at the suppression hearing, was that: he had

permission to use the vehicle he was arrested driving in; he had paid its owner $50 to borrow it; the

weapon found in the vehicle was not his; and the cocaine found in his pocket on arrest was for his

own personal use, to share with the girl who was the passenger in the car.  He claims he "never

cooked cocaine into crack in my life!"  (Dkt. 270-1 at 1).  Further, he suggests that the owner of the

car had motive for testifying against him: she wanted more money for its use, and when he refused

to give it to her, she accused him of stealing it.

Petitioner's claim fails.  Not only was there extensive, unrefuted credible evidence, including

a videotaped controlled buy, presented at trial by multiple governmental witnesses to show that

petitioner was an established crack cocaine dealer, petitioner's affidavit, rather than exonerating him

as to the permissive use of the car, supports the opposite conclusion.  By stating that the vehicle's

owner wanted more money for the use of the car, but that he refused to give it and still kept the car,

he is in effect, still admitting that he took it, or at the very least, continued to use it without the

owner's consent.  Petitioner was arrested driving a stolen car, with a loaded, cocked .357 magnum

on the seat next to him, along with all the accouterments of cooking crack cocaine, and 53.7 grams of cocaine in his pocket, far more than anyone would have had for personal use. Moreover, among all the witnesses who testified about his drug activities, not one corroborates his present claim that he was a *user,* rather than a seller of crack or cocaine. Furthermore, petitioner's affidavit fails to explain why he fled from the police if he was in rightful in possession of the car. Had petitioner had such a persuasive story to tell, it would have been told at trial. It is clear that counsel made a strategic decision not to have petitioner appear, since petitioner's version of the events is not credible and would have only opened him up to damaging cross examination. Forgoing choosing such a line of attack that would not help petitioner's case, but would only hurt it was undoubtedly a strategic decision which was not unreasonable under the circumstances. A strategic decision generally will not be second-guessed. Wiggins v. Corcoran, 288 F.2d 629, 640 (4thCirc. 2002). Petitioner has failed in his burden under Strickland.

**Ground Eight (d): Whether Trial Counsel was Ineffective for Misleading Petitioner into Relinquishing his Right to a Speedy Trial.**

Petitioner contends that trial counsel Stone's performance was defective because he "misled" him into relinquishing his right to a speedy trial.

This claim is merely a re-hash of Grounds One, Two and Three, albeit couched as ineffective assistance counsel claim. Because the merits of it have already been addressed *supra,* it will not be re-visited here. The record reveals that petitioner did not disagree with Attorney Stone's January 7, 2008 characterization of their attorney-client relationship as having broken down, and Stone's request to withdraw to protect petitioner's interest in having a new counsel appointed was done with petitioner's full agreement. Petitioner has neither shown ineffective assistance nor prejudice.

**Ground Eight (e) and (f): Whether Trial Counsel was Ineffective for Failing to Object to the Fact**

**that Petitioner was Denied an Impartial Jury, Chosen from a Fair Cross-Section of the Community, and Failing to Object when the Government Improperly Struck the One of the Only Two African-American Jurors on the Panel.**

Petitioner alleges that his Sixth Amendment right was violated when he was denied an impartial jury chosen from a fair cross section of the community for the area in which the jury was seated. He contends that the venire was racially imbalanced because there were only two African Americans on it. He asserts that counsel was ineffective for failing to object to African-Americans being systematically under-represented and for not requesting that a new venire be selected on those grounds. Further, he raises a Batson claim, alleging that the Government peremptorily challenged one of the only two black jurors on the venire.

In Duren v. Missouri, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979), the U.S. Supreme Court set forth a tripartite test a criminal defendant must meet to establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement: 1) that the group alleged to be excluded is a 'distinctive' group in the community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. Berghius v. Smith, 599 U.S. ___, 130 S. Ct. 1382, 1388, 176 L. Ed. 2d 249, 255 (2010) quoting Duren, supra at 364.

The United States District Court for the Northern District of West Virginia has instituted its "Plan Prescribing Method for the Composition of Jury Wheels and the Qualification and Random Selection of Grand and Petit Jurors" (hereinafter "Plan"), in compliance with Title 28, U.S.C. § 1863, Plan for Random Jury Selection. The Plan's purpose is to guarantee that

> all litigants entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the counties comprising the divisions wherein the Court is convened.

Plan, § 1.02.

Under the Plan, prospective jurors are randomly chosen from a master list of individuals registered to vote in the counties within the division and individuals who are listed as licensed drivers by the state's Division of Motor Vehicles. Plan, § 2.03.

The Plan also requires the random selection of jurors for an anticipated demand from the master jury wheel. Plan, § 2.08. Names of those deemed qualified are then drawn from the master juror wheel to serve as prospective jurors for a designated period of time. Plan, § 4.02. From there, names of jurors are randomly chosen and assigned to particular panels, again, in random order. Plan, § 4.03.

Here, petitioner's jury panel was randomly compiled from the names of licensed drivers and voters in either Berkeley, Jefferson, Morgan, Hampshire and Mineral Counties, providing a fair cross section of potential jurors in the Martinsburg division. His jury venire was likewise developed through a similar random selection process.

Petitioner's claim that African-Americans were systematically under-represented on the venire is unsupported by the record. The United States Census Bureau Demographic Profiles reports that the 2000 population estimates of the overall population in West Virginia was 95% white and 3.2% African American.[9] Nationally, the population was 75.1% white and 12.3% African American.[10] Berkeley County was 4.7% black; Jefferson County was 6.1% black; Morgan County was 0.6% black; Hampshire County was 0.8% black; and Mineral County was 2.5% black.[11] Thus, the percentage of African Americans in the Martinsburg Division is 2.94% and in a randomly drawn jury panel of 100 jurors, one would expect to find 3 to 4 African Americans represented.

---

[9] See <http://www.census.gov/prod/cen2000/dp1/2kh54.pdf>.

[10] See <http://www.census.gov/prod/cen2000/dp1/2kh00.pdf>.

[11] See <http://www.census.gov/prod/cen2000/dp1/2kh54.pdf>.

The Juror Information Sheet for the Petit Jurors for the U.S. District Court, Northern District of West Virginia, drawn for service at Martinsburg, West Virginia on March 4, 2008 lists the identifying information for 75 potential jurors.[12] Of that number, four are identified as being African American. Because 2.94% of 75 is 2.2, a finding of four African American jurors on the venire is almost twice what would be statistically expected.

Finally, a review of the Master Judge's List [petitioner's entire venire] shows that of the 36 out of 75 jurors randomly included, two were black. Those two jurors, whose initials are D.E.B., (identified as No. 100106468 02-0053) and S.D.C (identified as No. 100116702 02-0094) were randomly selected as Juror 3 and 12, respectively. This is in marked contrast to Berghius, *supra,* where the defendant's venire panel of 60 - 100 individuals, only 3 of whom, at most, were African-American, at a time when African-Americans constituted 7.28% of that jury-eligible population, and 6% of the pool from which potential jurors were drawn. Here, where petitioner's statistically expected number of African Americans on the venire was 1.05 (2.94% of 36), he had two African-American jurors in the venire, almost twice what was statistically expected. As an African American, he is a member of a 'distinctive' group in the community, but he cannot meet the second two requirements to make a showing of a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement: the representation of African Americans in venires from which his jury was selected was more than fair and reasonable in relation to the number of African Americans in the community. There was no under underrepresentation due to systematic exclusion of the group in the jury-selection process.

Petitioner's claim that counsel was ineffective for not objecting on this basis has no support

---

[12] There were jurors for three different cases (including this one) selected from this pool of 75 jurors..

in fact or law. Accordingly, any such objection by counsel on this ground would have been frivolous. Counsel cannot be found deficient for failing to object when there was no basis to do so and where objection would be futile. Since petitioner can prove neither deficient performance nor prejudice, he has failed in his burden under Strickland.

Petitioner's Batson claim, based on the fact that one of the only two available African Americans on the venire was peremptorily struck by the Government, also fails. In order to perfect a Batson claim, 1) "the defendant must make out a *prima facie* case that a peremptory challenge was based on purposeful discrimination; 2) the burden shifts to the government to produce a race neutral explanation . . . and 3) the trial court then has the duty of deciding whether the defendant has carried his burden and proved purposeful discrimination." U.S. v. Barnette, 211 F.3d 803 (4th Cir. 2000). To make this showing, a defendant must demonstrate only that 1) "he is a member of a cognizable racial group;" 2) "that the prosecutor has exercised peremptory challenges to remove venire members of the defendant's race;" and 3) "that these facts and any other relevant circumstances raise an inference that the prosecutor used [peremptory challenges] to exclude the veniremen from the petit jury on account of their race. Batson, *supra* at 96.

The record of the jury selection reveals that the Government moved to strike Juror 3 (D.E.B., identified as No. 100106468 02-0053) for cause. (Dkt.# 220 at 21). During voire dire, D.E.B. disclosed that her brother was convicted of possession with intent to distribute cocaine, one of the same offenses petitioner was being tried for (Id. at 16); she was a member of Mothers Against Drunk Driving (Id. at 18); she had been a witness in the sentencing phase of a capital murder trial (Id. at 15); and that her daughter's father had been convicted of capital murder of a police officer and was presently on death row. (Id. at 21). Defense counsel opposed the Government's motion and it was

overruled. Ultimately, Juror 3 was peremptorily struck, along with Jurors 2, 5, 21, 24 and 27 and Alternate Juror 31, all of whom were not African American.

Petitioner cannot meet his burden of a *prima facie* showing of a <u>Batson</u> challenge. Despite the fact that he is a member of a cognizable racial group, and there was a peremptory strike by the Government of a member of the venire group who was also a member of his racial group, petitioner cannot show that Juror 3 was struck on the basis of purposeful discrimination. There was ample evidence in the record to show race neutral reasons for striking Juror 3, who, as the AUSA noted "has too much baggage." (<u>Id</u>. at 21). Petitioner has not met his burden under <u>Batson</u>. Nor has he met his burden under <u>Strickland</u>. Counsel was not ineffective for failing to make a Batson challenge when there was no grounds to do so and where objection would be futile.

**<u>Ground Eight (g)</u>: Whether Trial Counsel Zimarowski was Ineffective for Failing to File a Proper Motion to Disqualify himself from Representation Once a Complete Breakdown in Communication Occurred.**

Petitioner argues that trial counsel Zimarowski was ineffective for not filing a "proper" motion to disqualify himself, when, on the morning of trial, he advised petitioner for the first time that he was facing a life sentence because the Government had filed a § 851 notice of his prior convictions. Petitioner contends that "[t]his prompt him [sic] to request that counsel disqualified [sic] himself . . . because he was not timely provided this information in a timely manner, [and he] . . . had no knowledge that he was facing a life sentence before he decided to proceed with a trial." (Dkt.# 270 at 23).

A review of the record belies petitioner's claim that he was unaware that the § 851 notice was filed until March 6, 2008, the morning of trial. At the pretrial hearing (for his originally scheduled trial) on January 4, 2008, while still represented by previous counsel Stone, this exchange was had:

MR. MUCKLOW:  **We have notified verbally Mr. Stone that we intend to file, first of all, our intention to rely upon information with regard to Mr. Wheeler's prior convictions.  That's a requirement under Title 21 United States Code Section 851, and that would be with regard to a sentencing, if applicable**.  **That would in effect double the penalties that Mr. Wheeler is now facing, and we intend to file that notice today.  But we have already provided that information to Mr. Stone previously**. . . .

. . .

THE COURT: ". . . What's the status of any plea negotiations?

MR. MUCKLOW: **Your Honor, we have - - we made offers to defendant through previous counsel.  Those were rejected.  We have made two offers to current counsel.  Both of those have been rejected.  And I understand that the most recent was either last night or this morning**.  The issue appears to be one of relevant conduct only, and we just believe in good faith we can't just disregard the evidence that we feel we have that's readily provable, and that seems to be the sticking point.  But the defendant has insisted he wants his day in court and we're prepared to give it to him.  But I'm always willing to discuss mattes with Mr. Stone.

MR. STONE: Your Honor, that's correct.  I have met with Mr. Wheeler, most recently last night.  And I did review with him the United State's most recent plea offer dated January 2nd, and Mr. Wheeler has rejected that plea offer.  He does feel that the relevant conduct that's being attributed to him is more than what he was responsible for.  **I have explained to him that the Government intends to file the Title 21 USC [sic] Section 851 enhancement, and I have explained to him that obviously at trial a conviction will, in all likelihood, subject him to a much more severe sentence.  And Mr. Wheeler is aware of that fact**.

THE COURT: All right, I just want to tell you, Mr. Wheeler, you should consult with your attorney very carefully.  If you want your day in court, you'll get it.  That's what I'm here for, and that's what I'll be in Martinsburg for.  And you have an absolute right to go to trial.  And I don't mean to infringe on that at all.  **But I do want to tell you that under the Sentencing Guidelines, in the event you were to be convicted, you would lose a number of reductions that are available to people who may enter a plea of guilty that are not available to people who go to trial.  And those can dramatically affect your sentence.  And furthermore, that if any agreement is to be reached, it needs to be reached before the Government files formal notice of the prior conviction, because those enhancements are also significant**. . .

(Dkt.# 217 at 4 and 23 - 27) (emphasis added).

Further, at the January 7, 2008 status hearing,[13] Attorney Stone advised the Court:

MR. STONE: Your Honor, I guess before we get started, I just met with Mr. Wheeler, and now he has indicated that he's not willing to follow through. Is that correct? And - -

THE COURT: Okay I'll just ask him a few questions then.

MR. STONE: Well, but could I just briefly make a record on this, Your Honor?

THE COURT: Yes.

MR. STONE: **As of Friday [January 4, 2008] it was my understanding that he wanted to plead to the indictment. And consequently, I filed a motion or a notice to that effect. And now Mr. Wheeler indicates that's not the case. And I believe he says now he wants to go to trial**. You know, essentially I'm not ready to go to trial, but also I'm concerned that there may very well be potential ineffective assistance of counsel claim [sic] in light of the fact that I think we may have had a breakdown here in the attorney client relationship. And I'm not sure if I need to file an actual motion to the District Court Judge, or if that's something that your Honor can take up. But, I mean, I feel that I'm probably at the end of the road as far as my ability to assist Mr. Wheeler in his defense. **And also in light of the fact that I know the Government held off on filing the 851 enhancement based upon, you know, my representations to Mr. Mucklow. And I thought we had a resolution**. And, you know, I'm just concerned. Maybe some other counsel might be able to explain to Mr. Wheeler the gravity of the situation. But, you know - -

THE COURT: Are you asking based upon his desire to go to trial and not enter a plea, to be relieved of - -

MR. STONE: Well, Your Honor, not only that, but my primary concern is, I think we have got a breakdown here of the attorney client relationship. And, you know, apparently he feels, I guess I wasn't clear with him. I thought I was clear . . .

(Dkt.# 218 at 3 - 5)

Later that day, USA filed the § 851 notice of prior convictions. Attorney Stone was formally relieved of representation on January 9, 2008 and Attorney Zimarowski was appointed. On January 22, 2008, the superseding indictment was filed, adding the new Count One conspiracy charge.

---

[13] This hearing was originally intended to be a plea hearing, but petitioner changed his mind about entering the plea.

Petitioner proceeded to trial with Attorney Zimarowski. On March 6, 2008, the morning of trial, before the jury entered, counsel advised the Court thus:

> MR. ZIMAROWSKI: From the defense, Your Honor, as I communicated to Mr. Mucklow and the Court yesterday, Mr. Wheeler has expressed dissatisfaction with my representation of him and has requested that I withdraw from the case. That was communicated to the Court, and I believe it might be appropriate to have Mr. Wheeler state his reasons on the record so the Court can make an informed judgment.

> THE COURT: All right, thank you. Mr. Wheeler, is that true, that you want to dismiss your attorney?

> THE DEFENDANT: Yes, sir.

> THE COURT: Why is that?

> THE DEFENDANT: Because a lot of things he told me he was going to do in my case, and a lot of points that involve my case, that he did not bring it into the light. He kept telling me, "They don't have no issue. They don't have no reason. It is not nothing." Really major facts in my case. He haven't spent no time with me. He haven't told me things that I need to know.

> THE COURT: Such as what?

> THE DEFENDANT: Well, everything that's going on. He's just leaving me in the blind. A lot of motions. Say - - he say he was going to file for me and send it to me, he never done them. Everything that's involved in my case, he is telling me, there is not an issue. Nobody is not going to believe me [sic]. That I'm a nobody. That I don't have nothing in common with the jury. They are not going to believe my case. They are going to believe the officer. He hasn't spent no time with me. Yesterday he came out there 30 minutes. Since he came - - since he's been my attorney, he's from Morgantown. He comes, spends ten minutes with me in my whole case. **I'm facing life.** He hasn't spent a whole hour with me.

> THE COURT: All right, thank you. Mr. Zimarowski, have you spent time with the defendant?

> MR. ZIMAROWSKI: Your Honor, I have spent time with the defendant. I am the third attorney.[14] The first two attorneys, and particularly the second attorney, had prepared this case. I believe there was a pretrial early January that this matter was

---

[14] Attorney Zimarowski was actually the fourth attorney; apparently he overlooked Attorney Garrett, appointed counsel #2, who only represented petitioner for one day before being replaced for a conflict.

scheduled for trial, and Mr. Wheeler replaced Mr. Stone. . . . **I have probably spent, I'd say a total of a couple hours with Mr. Wheeler. I have not spent an inordinate amount of time with Mr. Wheeler, but, he has been advised in detail regarding the issues of the 851 notice that was filed. And by the way, for the record, the 851 notice was filed in the superseding indictment that was filed during the transition from attorney two to attorney three, myself**. So that was basically water under the bridge . . .

Mr. Wheeler has certain concerns over the ability to impeach the Government's witnesses, particularly the police officers, and confidential informants. And he is dissatisfied with my preparation in that regard. He has alleged, or maintained, that I have declined to secure certain public records and documents which he believes would be impeachable as far as confidential informants could testify in a given way. And until that witness testifies, I cannot respond to that particular issue. But, I have prepared cross-examination of the witnesses as indicated, but there is a significant breakdown in communication.

Some of the things that Mr. Wheeler is stating that I relayed to him regarding jury perceptions and things of this nature fall into the line of attorney client confidences, and they are fairly accurate, Your Honor. I don't like to build false expectations in a particular client, and I tend to have a truly objective, and call it a cold bedside manner, when it comes to advising clients as to the reality of their situation. And in this particular case, I have exercised nothing more than I normally do with clients. I have given him my candid, cold, objective assessment as to his status in this case, and I will step aside if the Court wants to allow some other attorney to come in and do the things that Mr. Wheeler thinks should be done.

**I would advise the Court that since there is an 851 motion, he does face life without the possibility of release in the event that he is convicted of Count 1 of the more than 50 grams of crack cocaine.** That factor alone may weigh in favor of the Court granting Mr. Wheeler's motion.

(Dkt.# 221 at 3 - 7) (emphasis added).

Nowhere in his March 6, 2008 statement to the Court did petitioner complain of being blindsided by counsel or allege that he had just learned for the first time, on the morning of trial, that a § 851 notice had been filed and he was now facing an enhanced sentence. Nor did petitioner challenge in any way counsel's representations to the Court regarding the extensive time frame in which he had been repeatedly advised in detail about the § 851 notice.

36

It is clear from the record that petitioner was well aware, having been repeatedly advised for at least two and likely as long as four months before trial, not only by both counsel Stone and Zimarowski, but also by the AUSA and the Court, that the § 851 notice would be filed and that it would considerably enhance his sentence. Not only are petitioner's representations unsupported by the record, his vague claim that counsel was somehow ineffective for not filing a "proper motion" to withdraw fails. Counsel was neither ineffective in this regard, nor can petitioner prove prejudice.

**Ground Eight (h): Whether Trial Counsel Zimarowski was Ineffective for Failing to Explain Petitioner's Right and Option for Self-Representation to him.**

Petitioner contends that on the morning of trial, when discussions were had about Attorney Zimarowski's withdrawing from representation, after the AUSA indicated it had no objection to petitioner representing himself and was willing to proceed to trial under those circumstances, counsel failed to explain his right to do so.

This is merely a re-hash of Grounds One, Two and Three, framed as an ineffective assistance of counsel claim. Because the merits of the underlying claim have already been addressed *supra,* it will not be re-addressed here. Counsel was neither ineffective for failing to explain something petitioner expressed no interest in, nor can petitioner show prejudice.

**Ground Eight (i): Whether Trial Counsel Zimarowski was Ineffective for Not Preserving as Grounds for Appeal the Issue of a Lab Report that was Improperly Admitted at Trial, in Violation of the Hearsay Rule.**

Petitioner asserts, without elaboration, that at trial, an unspecified lab report was admitted into evidence in violation of the hearsay rule without objection by counsel.

This claim is a re-hash of Ground Seven, albeit framed here as a claim of ineffectiveness by counsel for failing to object. The merits of this claim have already been addressed *supra* and found to have no basis in fact or law. Counsel did object to the admission of all of the lab reports and was

overruled by the Court. Petitioner has failed in his burden under Strickland.

**Ground Eight (j): Whether Trial Counsel Zimarowski was Ineffective for Failing to Object to the Witness Kevin Miller's Testimony's Vouching for and Bolstering the Testimony of the Witness Katina Butts.**

Petitioner alleges that at trial, Sgt. Kevin Miller's testimony constituted impermissible vouching for and bolstering of the prior testimony of the confidential informant ("C.I."), Katina Butts, and that counsel failed to object.

"It is error for the Government to bolster or to vouch for its own witnesses." U.S. v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993) *quoting* U.S. v. Samad, 754 F.2d 1091, 1100 (4th Cir. 1984). "Vouching generally occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness." Id., *quoting* U.S. v. Kerr, 981 F.2d 1050, 1053 (9th Cir. 1992). A prosecutor may not, *inter alia,* "make explicit personal assurances that witness is trustworthy or implicitly bolster the witness by indicating that information not presented to the jury supports the testimony. Id., *quoting* U.S. v. Sims, 719 F.2d 375, 377 (11th Cir. 1983). "While improper vouching must generally come from the prosecutor's own mouth, a prosecutor's solicitation of assertions of trustworthiness from government witnesses may also be impermissible vouching." Id., *quoting* U.S. v. Piva, 870 F.2d 753, 760 (1st Cir. 1989).

Here, petitioner contends that an excerpt from Sgt. Miller's testimony on direct exam vouched for or bolstered the prior testimony of the C.I., Katina Butts:

Q. At that point did you have any reason to disbelieve what she told you?

A. She had never been dishonest that we could show in the past, no.

(Dkt.# 221 at 224).

A review of the entire record reveals that this excerpt was in response to the AUSA's

questioning Sgt. Miller about Butts' reporting petitioner's taking her car without permission. At the beginning of this line of questioning, defense counsel repeatedly objected to Miller's reporting of what Butts had told him as hearsay, and the Court specifically directed the jury that it was to consider the testimony not for the truth of the matter asserted, but only for the purpose of showing "why . . . [Sgt. Miller] did what he did with that information." (Dkt.# 221 at 222 - 224). Petitioner was later arrested driving the stolen vehicle. Miller's testimony was introduced to lay a foundation for subsequent testimony by Task Force officers regarding their belief that the car was stolen, justifying their pursuit and arrest of petitioner. There was no vouching or bolstering; to the contrary, in that same testimony, Sgt. Miller also disclosed that Butts admitted she had lied earlier when she told the officers she went home after performing the controlled buys for them. Instead, she revealed she had gone back and purchased more crack on her own, this time for her own use. (Id. at 224).

Because no bolstering or vouching occurred, counsel cannot be found ineffective for failing to object to something that never happened. Petitioner has not met his burden under Strickland.

**Ground Eight (k): Whether Trial Counsel was Ineffective for Failing to Argue in Detail that the Evidence was Insufficient to Convict him of Count Two.**

Petitioner claims that at trial, there was insufficient evidence to support Count Two's distribution of crack cocaine charge that he was the one who provided crack cocaine to Katina Butts in the first April 27, 2006 transaction in the apartment bathroom. He contends that because the person who actually handed the drug to Butts was "Jerry"[15] and not him, and the record demonstrated that there were many individuals who sold narcotics from that same residence, the Government did not prove beyond a reasonable doubt that it was actually he who carried out this

---

[15] "Jerry" was another individual in the apartment where the C.I. purchased the drugs.

specific drug sale.  He asserts that counsel was ineffective for not arguing this point in detail.

In reviewing whether petitioner was convicted based on insufficient evidence, the Court must view the record in the light most favorable to the prosecution and determine whether "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319.  As explained by the Court in <u>Jackson</u>, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u>  In support of his claim,  Petitioner directs the court's attention to a brief portion of Katina Butts' trial testimony. After considering the evidence offered by petitioner, as well as the entire trial record, the court finds that he has failed to show that no rational trier of fact could have found beyond a reasonable doubt that he unlawfully, knowingly and intentionally distributed approximately  approximately 0.14 gram of crack cocaine to a person known to the grand jury in exchange for $100, in violation of Title 21 U.S.C. §§ 841(a)(1) and (841(b)(1)(C).   The witness Butts testified in detail about purchasing crack from petitioner; the first controlled buy was captured on video and audio recording via the transmitter worn by the informant. She testified that petitioner was suspicious of her, and because he thought she might be an informant, he made her lift up her shirt to prove she was not wearing a "wire."  Even then, he refused to sell directly to her, but went in to the bathroom, gave the crack to "Jerry" and made her make the transaction with Jerry.  (Dkt.# 221 at 185 - 186).  The videotape of the transaction was shown at trial and there was direct and cross-examination testimony on the issue not only from the C.I., Butts, but also from the officer who collected the drugs and the videotape and took a statement from Butts immediately after the transaction was completed.  Further, multiple witnesses testified to their drug dealings with petitioner, including his co-defendant Hairston and

Toni Burks, whose house was used for the transaction. Petitioner argues that because the crack was not directly handed to Butts from his hand, but only given to her by his intermediary "Jerry," he cannot be convicted of distribution, but only 'aiding and abetting." However, the clear evidence at trial was that petitioner merely handed the crack to Jerry in the bathroom immediately before the transaction with Butts, intending that Jerry give it to Butts. This Court is bound by the "credibility choices of the jury" and therefore will not engage in re-evaluating the credibility of witnesses. See United States v. Saunders, 886 F.2d 56, 62 (4th Cir. 1989), relying on United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983). For these reasons, petitioner's claim fails. There was sufficient evidence presented to support his conviction on Count Two, and therefore, nothing to which counsel could have objected. Petitioner has neither proven ineffectiveness nor prejudice.

**Ground Eight (l): Whether Trial Counsel Zimarowski was Ineffective for Failing to Call Petitioner to Testify at Trial, After Petitioner Indicated he had Changed his Mind About Testifying.**

Petitioner contends that, after originally deciding against testifying at trial, he changed his mind on the second day and notified counsel, only to be told that: he had waived the right to testify; he would not be called to do so; he should "act accordingly" in the courtroom; and "if he had any complaint, that it should be addressed in a post conviction motion." (Dkt.# 240-1 at 9).

A criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial. U.S. v. Midgett, *supra* at 325. A defendant's waiver of this right, like that of any other constitutional right, is "personal" and must be made voluntarily and knowingly. Sexton v. French, *supra* at 881.

The record reveals that at the end of the first day of trial, after the Government presented its case and petitioner's Rule 29 motion was overruled by the Court, this exchange was had:

THE COURT: . . . It is my understanding you have no witnesses?

MR. ZIMAROWSKI: Your Honor, I have no witnesses, and the defendant has been advised that he has a right to testify, and that no one can overrule that particular right. And with advice of counsel, he is not going to testify at this time.

THE COURT: Mr. Wheeler, I just need to ask you a couple questions. You understand that the decision to testify is your - or whether or not to testify is your decision and your decision alone? However, in making that decision, you should seriously consider the advice provided to you by your attorney. Have you discussed it with your attorney? I need you to give a verbal answer, sir.

THE DEFENDANT: Yes.

THE COURT: And at this point, do you wish to testify?

THE DEFENDANT: No.

THE COURT: Okay. Thank you. We're going to break now. I'm going to ask counsel to join me for an informal off the record discussion of the instructions . . .

(Dkt.# 221 at 272).

The following morning, in open court before the jury was brought in, discussion was had between the AUSA, counsel and the Court over a change to a jury instruction to which defense counsel objected. In overruling the objection, the Court stated:

THE COURT: Well, that objection is overruled. Let me ask counsel for the Government, as it stands now, does the Government have any objection to the charge?

MR. MUCKLOW: No, Your Honor.

THE COURT: As - - with the exception of the objection previously stated, does the defendant have any objection to the charge?

MR. ZIMAROWSKI: No additional objections, Your Honor.

THE COURT: All right, then. I just wanted to put on the record before we got the jury in here. Mr. Wheeler, I know you were upset with me yesterday when I didn't allow you to fire your attorney, but I want to tell you, I think your attorney has done a heck of a good job for you. All right, are we ready to have a closing argument?

MR. MUCKLOW: We are.

THE COURT: I would ask to bring in the jury, please.

(Dkt.# 222 at 5 - 6).

Petitioner, after being specifically advised by counsel in open court the afternoon before that he had a right to testify that no one could take away, and advising the Court that even though he understood that the decision whether to testify was his alone, he still did not wish to, never expressed any desire to do so when given the opportunity to directly address the Court the next day. In his reply to the Government's response, petitioner cites to <u>Chang v. U.S.</u>, 250 F.3d 79 (2nd Cir. 2001) stating "[a]t trial, defendants generally must speak only through counsel, and, absent something in the record suggesting a knowing waiver, silence alone cannot support an inference of such a waiver." <u>Chang</u>, *supra* at 84. What petitioner neglected to include from <u>Chang</u> was the remainder of the 2nd Circuit's statement on the issue: "[a] defendant who is ignorant of the right to testify has no reason to seek to interrupt the proceedings to assert that right, and we see no reason to impose what would in effect be a penalty on such a defendant." <u>Id</u>. However, here, petitioner clearly was not ignorant of his right to testify, as it had just been explained to him in detail by both counsel and the Court. Because the burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, the burden shouldered by trial counsel is a component of effective assistance of counsel. Consequently, a criminal defendant who claims that trial counsel was constitutionally ineffective for failing to inform him of his right to testify . . . must satisfy the two-prong test established in <u>Strickland</u>. <u>Sexton v. French</u>, *supra* at 882. Here, petitioner can do neither. Clearly counsel had advised him and recounted that advice in open court. Not only that, but the Court also advised him, exceeding its duty to do so. <u>U.S. v. McMeans</u>,

927 F.2d 162, 163 (4th Cir. 1991) *(per curiam)* (following the Ninth Circuit in holding that there is no affirmative duty of a trial court to advise the defendant of his right to testify, nor any duty to obtain an on-the-record waiver of the right).  To waive the right to testify, all that a criminal defendant needs to know is that a right to testify exists. Id.  Like McMeans, petitioner knew that he could testify if he wanted to, and his failure to testify was not the product of ignorance of the right, but rather, a decision of "his own choosing, and he can not now approach the court and complain of the result of his decision." Id.  Further, as in McMeans, petitioner's suggestion that there was some conflict between himself and his lawyer regarding whether he should testify, "because there is no evidence of such a dispute on the record, this court may proceed only on the information that is preserved in the record. Id.

There exists a strong presumption counsel's conduct falls within a "wide range of reasonable professional assistance."  Strickland, 466 U.S. at 694.  Furthermore, "the advice provided by a criminal defense lawyer on whether his client should testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance."  Carter v. Lee, 283 F.3d 240, 249 (4th Cir 2002) (internal quotation marks omitted).  Because it appears petitioner's counsel likely merely strongly advised - as opposed to coerced - petitioner he should not testify, the Court finds his counsel was not ineffective on the basis presently alleged.  See United States v. Laureano, 2006 U.S. Dist. LEXIS 78227, at *6-10 (D.S.C. Oct. 25, 2006).

Even if petitioner could establish that his counsel was ineffective for advising him against testifying, the Court finds petitioner has failed to show how he was prejudiced by his counsel's advice.  The evidence against him at trial was overwhelming; he would have been the sole witness for the defense. Since petitioner has not offered any specifics as to what his trial testimony would

have been, it can be inferred that it would have been what he provided in the reply affidavit, attesting to what he would have testified to at the suppression hearing. That account not credible in any way: it did not explain how he happened to be arrested driving a stolen car, with 53.7 grams of cocaine in his pocket, drug trafficking paraphernalia and a loaded, cocked .357 magnum on the seat next to him, let alone why all of the Government's witnesses would be lying about him. Further, had he testified, he would have faced intense scrutiny on cross-exam, significantly prejudicing his defense.

**Ground Eight (m): Whether Trial Counsel Zimarowski was Ineffective for Failing to Object to Numerous Improper Comments, Vouching and Mis-Stating of the Record in the Government's Closing Argument.**

Petitioner lists six different instances where the Government made improper remarks during closing argument, contending that trial counsel was ineffective for failing to object.

There is a two-pronged test to determine whether a prosecutor's misconduct in closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." U.S. v. Wilson, 135 F.3d 291, 297, 1998 U.S. App. LEXIS 1253 (4th Cir., 1998) *quoting* Darden v. Wainright, 477 U.S. 168, 181, 91 L.Ed. 2d 14, 106 S. Ct 2464 (1986). Specifically, a defendant must show that the prosecutor's remarks were improper and that they 'prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial.'" Id., quoting United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995). A prosecutor may argue that the evidence gives rise to an inference, but the suggested inference must reasonably be drawn from the facts in evidence. U.S. v. Wilson, 135 F.3d 291, 298, 1998 U.S. App. LEXIS 1253 (4th Cir., 1998). There are several factors relevant to the determination of whether a defendant's substantial rights were prejudiced to the point that he did not receive a fair trial: 1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; 2) whether the remarks

were isolated or extensive; 3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.  U.S. v. Wilson, 135 F.3d 291, 299, 1998 U.S. App. LEXIS 1253 (4th Cir., 1998).

Here, petitioner has made six allegations that the AUSA's closing remark improperly misstated the evidence or vouched for the testimony of various witnesses.   The undersigned has reviewed the trial record in detail and finds that none of the remarks were improper.  The instances complained of were isolated, not extensive.  Further, they were mere argument; the jury was properly instructed that "statements, arguments and questions by lawyers" were not evidence and that it was their "duty to find from the evidence what the facts" were (Dkt.# 221 at 12); the jury is presumed to have followed the instructions that were provided to them.  U.S. v. Franciso, 35 F.3d 116, 119 (45h Cir. 1994).  The AUSA's comments were derived from reasonable inferences drawn from facts in evidence, and were not misleading.  Petitioner's rights were not prejudiced thereby; the evidence against him was overwhelming; even if the remarks had not been made, the jury was free to draw its own reasonable conclusions about the evidence, and its verdict reflects that it did.

Petitioner's claim that counsel was ineffective for failing to object here has no support in fact or law.   Counsel cannot be found deficient for failing to object when there was no basis for an objection and where objection would be futile. Since petitioner can prove neither deficient performance nor prejudice, he has failed in his burden under Strickland and this claim should be denied.

**Ground Eight (n): Whether Trial Counsel Zimarowski was Ineffective for Failing to Request that the Court Provide a Curative Instruction for the Use of Closed Captioning Appearing in**

**a Videotape Used at Trial**.

Petitioner asserts that trial counsel Zimarowski was ineffective for failing to request the curative instruction promised by the Court to previous counsel Stone in a pretrial hearing on January 4, 2008, after he objected to the addition of a "transcript" in closed captioning being created by the Government and added to certain audio and video recordings relating to the controlled buys, for the jury's review.

A review of the record corroborates petitioner's claim that Attorney Stone did object to the "closed captioning" being added to the tapes. (Dkt.# 217 at 21). The Government invited defense counsel to prepare its own transcript for consideration. The Court ruled that it would permit the Government to present closed captioning, as it routinely did so under the same circumstances as a convenience to the jury, providing a cautionary instruction that the actual evidence to be considered was the words said on the tape, not the transcript added to it by the Government. (Id. at 21 - 22). Despite that, apparently in oversight, at trial the curative instruction was not included in the jury charge. However, in the jury's preliminary charge, the Court advised that the evidence they were to consider would "consist of the testimony of witnesses, documents, and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that the Court may instruct you to find." (Dkt.# 221 at 12).

At trial, the tapes were played with the transcripts. The accuracy of the recordings was confirmed by the testimony of the witnesses who were present when they were made: the C.I., Katina Butts (Dkt.# 221 at 184 and 186 - 187), and Cpl. Andrew Evans (Id. at 146 - 47 and 161 - 62). Moreover, Cpl. Evans was able to contemporaneously listen in, via the transmitter worn by Butts, while the first controlled buy was recorded, and hear what was said, and testified as to what

he heard.  (Id. at 157 - 59).  Attorney Zimarowski objected to Evens' testimony as invading the province of the jury, reiterating Stone's earlier pretrial argument that the best evidence was the tapes themselves.  (Id. at 159).  His objection was overruled to the extent that Evans could testify as to what he heard via the transmitter.  During deliberations, the jury asked to review the recordings, but the actual records of the tapes that were admitted into evidence did not contain the synchronized transcripts. See Trial Exh. 1, 1a, 2 and 4 (Dkt.# 178).

Here, petitioner has not alleged, let alone shown, that the transcripts did not accurately depict or interpret what was said on the tapes. Nor does it appear from the record that counsel disagreed enough with the Government's version of the tapes to prepare its own transcript in response to the offer made at the January 4, 2008 pre-trial hearing.  Finally, the accuracy of the recordings were confirmed by the testimony of the witnesses present when the events transpired. Attorney Zimarowski may have been ineffective in failing to request the curative instruction, but petitioner cannot prove prejudice.

**Ground Eight (p) and (q): Whether Trial Counsel Zimarowski was Ineffective for Failing to Correct Perjured Testimony by Two Government Witnesses  About a Photo of Petitioner and Whether Counsel was Ineffective for Failing to Challenge the Impermissibly-Suggestive Single Photo Identification of Petitioner by the Witness Katina Butts.**

Petitioner's claims here are inter-related and thus have been combined for expediency.  Here, petitioner asserts that counsel (presumably Zimarowski) was ineffective for not correcting perjured testimony by two Governmental witnesses.  Further, he alleges that this testimony was about an impermissibly-suggestive single-photo identification of him that counsel (presumably Amore, Stone and Zimarowski) were ineffective for not challenging before trial.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was

so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. U.S., 390 U.S. 377, 384, 88 S. Ct. 967; 19 L. Ed. 2d 1247 (1968); See also Harker v. Maryland, 800 F.2d 437, 443 (4th Cir. 1986)(holding that evidence of eyewitness identification should only be excluded from the jury's consideration if the evidence is "manifestly suspect."). The Fourth Circuit follows the U.S. Supreme Court's two-step analysis, set forth in Manson v. Brathwaite, 432 U.S. 98, 110 - 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977) to determine whether eyewitness identification testimony is admissible: first, a defendant must show that the photographic lineup procedure was impermissibly suggestive. Second, even if the procedure was suggestive, an in-court identification is still valid if it was reliable. Factors used to assess reliability include: 1) a witness' opportunity to view the perpetrator at the time of the crime; 2) a witness' degree of attention at the time of the offense; 3) the accuracy of the witness' prior description of the perpetrator; 4) the witness' degree of certainty when identifying the defendant as the perpetrator at the time of the encounter; and 5) the length of time between the crime and the confrontation. See U.S. v. Wilkerson, 84 F.3d 692 (4th Cir. 1996).

Here, petitioner contends that counsel was ineffective for not requesting a Wade[16] hearing before trial, to suppress witness Katina Butts' identification of him after the controlled buys were completed. Petitioner asserts that his photo could only have been placed in the Martinsburg Police Department's photo album after his arrest, because the Martinsbug police never had a photo of him prior to that. Further, he contends, it was a "blow-up to allow it to standout [sic] as a single suggested photo." (Dkt.# 270 at 39).

The uncontroverted trial testimony of the eyewitness Katina Butts was that on April 27,

_____

[16] U.S. v. Wade, 388 U.S. 218; 87 S. Ct. 1926; 18 L. Ed. 2d 1149 (1967).

2006, she made two face-to-face controlled buys from petitioner. The first was recorded on video and audio tape via a transmitter she was fitted with by the Task Force officers. She left and met with the officers immediately after each, turned over the drugs, gave statements identifying petitioner and signed them. She testified that: she told the officers she was going home afterwards, but instead returned to the apartment and bought more crack, this time for herself, and smoked it. She then went to a trailer across the street with another individual, and there met petitioner again. He offered her more crack cocaine for the use of her car, and she accepted. He used the car for approximately an hour and then returned it. She spent the rest of the night at the trailer smoking crack with others. During that time, petitioner again asked to borrow her car in return for some crack and she permitted him to take the vehicle, but this time, he did not bring it back. (Dkt.# 221 at 185 - 198). Sergeant Kevin Miller of the Martinsburg Police Department testified that he was assigned to Eastern Panhandle Drug and Violent Crimes Task Force and set up the April 27, 2006 controlled buys with petitioner after speaking to Katina Butts. The two buys were made approximately an hour apart; immediately after the second, he showed Katina Butts an album of photographs,[17] asking her to identify anyone from whom she had purchased drugs.[18] (Id. at 219 - 221 and 236). He testified that the procedure used when showing the album to Butts was the standard way it was always done: the index (revealing the actual identities of the individuals depicted) was removed, leaving only numbers to identify the photos; he showed Butts the album, instructed her to go through it and stop if she recognized anyone, and to tell him how she recognized them. (Id. at 220 - 222). He did not

_____

[17] The album contained approximately 250 unlabeled photos of black, white and Hispanic men and women. It was a "random collection of posed, candid, surveillance and "mug shot" type photographs . . . a mix of black and white and color" photos. The photos were only identified by numbers. (Dkt.# 265 at 69). The examination of the photo album took place at K-Mart.

[18] At trial, no questions were asked of Ms. Butts regarding her identification of petitioner from the photo album.

emphasize any particular photograph or indicate to her which photo she should pick. (Id. at 221).

He testified that Ms. Butts identified petitioner by both his nicknames ("Psycho" and "Black") as well as some other individuals, and she indicated that petitioner was the one from whom she had just bought crack cocaine. (Id. at 221 - 222, 235 and 237). The photo album contained only one picture of petitioner when Butts viewed it,[19] and Miller testified that although he could not say the exact date when it was placed in the album or who placed it there, because he did not have the album with him, it was probably added to the album "maybe a week prior to when we showed [Katina Butts] the photo book" but in any case, at some point prior to April 20th or 27th, 2006 (Id. at 228 - 231 and 237). He testified that photos for the album were obtained from various sources, including the Eastern Regional Jail;[20] booking photos from the Martinsburg Police Department; photos taken during the execution of search warrants; personal photos; drivers' license photos, and photos of individuals involved in drug activity in other jurisdictions received from other law enforcement agencies, including those in Hagerstown, Maryland.[21] (Id. at 229).

These claims have no support in fact or law. A complete review of the record reveals that Ms. Butts was not shown a single "blow-up" photo to encourage her to choose petitioner; she was shown an array of approximately 250 photos of individuals of both genders and different races, and asked to identify anyone from whom she had purchased drugs. She chose petitioner's photo, as well as photos of several other individuals. The photo array was neither impermissibly suggestive nor

---

[19] A second photo of petitioner was later added to the album, after Katina Butts had already identified petitioner on April 27, 2006. (Dkt.# 221 at 237 - 238).

[20] The Eastern Regional Jail is located in Martinsburg, West Virginia.

[21] Petitioner had numerous convictions for various offenses, including prior drug felonies, in Washington County, Maryland. Dkt.# 203 at 21 - 27.

was the identification unreliable. Butts had had ample opportunity to view petitioner in broad daylight, up close, during the two controlled buys, and she made the photo identification immediately after the second encounter. She was very focused on the events that had transpired, gave a detailed statement about them and testified in detail about them later at trial. Although the description in her initial statement to the police was inaccurate as to petitioner's height, she expressed no uncertainty when identifying petitioner from the photo immediately after the controlled buys.[22] See Wilkerson, *supra.* Further, hours after she picked his photo from the array, she twice obtained crack cocaine from him in exchange for the use of her car, further strengthening her ability to identify him at trial. Finally, petitioner's allegation that counsel was ineffective for not requesting a Wade hearing before trial, to suppress witness Katina Butts' identification of him is patently false. Attorney Stone did file a motion to suppress the pre-trial photo identification, on November 9, 2007 (Dkt.# 93) and an evidentiary hearing was held on the issue on December 5, 2007. Sgt. Kevin Miller testified there, as he did at trial, that the purpose of the showing of the photo array was to elicit Butts' identification of any individuals from whom she had purchased drugs, not only petitioner, and that she had identified multiple individuals, but specifically identified petitioner as the one from whom she had just made the controlled buys. Petitioner's allegation that counsel should have objected to "perjured testimony" lacks merit as well. Since there was no perjury, there was nothing to which counsel could have objected. Further, if the photo Butts chose from the array on April 27, 2006 had actually proven to have been the photo of petitioner taken at his May 1, 2006 booking, counsel surely would have used this point in attempting to prevail on the suppression of the pre-trial

---

[22] Sgt. Miller testified at the hearing on the suppression of the pre-trial identification that Butts expressed no hesitation in her identification of petitioner when she picked his photo out of the photo array. (Dkt.# 216 at 40).

identification.[23]  Because he did not raise the issue in his December 20, 2007 objection (Dkt.# 116)

to the Magistrate Judge's December 10, 2007 Report and Recommendation (Dkt.# 104) on the

motions to suppress, it can be inferred that the photo showed no such thing.  Accordingly, counsel

cannot be ineffective for failing to correct perjured testimony where there was none, or for not

objecting to an impermissibly-suggestive single-photo identification of petitioner when it never

occurred.

**Ground Nine (a) - (t): Whether Appellate Counsel was Ineffective for Failing to Raise as Grounds for Appeal Grounds One - Seven and all of Petitioner's Ineffective Assistance of Counsel Claims Against Trial Counsel.**

Petitioner alleges that appellate counsel was ineffective for not raising as grounds for appeal

Grounds One - Seven, and all of his Ground Eight (a) - (q) claims of ineffective assistance of trial

counsel.

The standard of effective assistance of appellate counsel is the same as for trial counsel.  See

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel

was ineffective for failing to pursue a claim on direct appeal, the applicant must normally

demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness

in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.") (internal citations

and quotations omitted).  On review, however, appellate counsel is accorded the "presumption that

he decided which issues were most likely to afford relief on appeal."  Pruett v. Thompson, 996 F.2d

1560, 1568 (4th Cir. 1993).

---

[23] Towards the end of the December 4, 2007 suppression hearing, arrangements were made between counsel and the AUSA to obtain a copy of the photo that Butts had identified on April 27, 2006 for Attorney Stone's review.  (Dkt.# 216 at 34 - 35).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Petitioner's claims that appellate counsel was ineffective for not raising as issues for appeal his Grounds One - Seven must all fail. These claims have already been addressed *supra;* in addition to being procedurally defaulted, they are meritless. Clearly, here, appellate counsel examined the record with a view to selecting the most promising issues for review. Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). Since these issues lacked merit, it is not surprising that appellate counsel did not choose them as issues for appeal. Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). Petitioner cannot claim that counsel was ineffective in not raising an issue on appeal when there was no issue to raise. See Smith v. Robbins, 528 U.S. 259, 288 (2000). Ergo, these claims fail.

Furthermore, as for all the ineffective assistance of counsel claims raises in Grounds Eight (a) - (q) that petitioner alleges appellate counsel was ineffective for not raising as grounds for direct appeal, pursuant to the unpublished, *per curiam* opinion in <u>U.S. v. Atwood</u>, 3 Fed. Appx. 155 (4th Cir. 2001), claims of ineffective assistance of counsel are generally not cognizable on direct appeal. <u>Atwood,</u> *supra* at 156, quoting <u>U.S. v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Rather, to allow for adequate development of the record, federal prisoners must ordinarily pursue such claims in a motion under 28 U.S.C.A. § 2255. <u>Atwood</u>, *supra* at 156, *quoting* <u>U.S. v. Hoyle</u>, 33 F.3d 415, 418 (4th Cir. 1994). An exception exists when the record conclusively establishes ineffective assistance. <u>Atwood</u>, *supra* at 156, quoting <u>King</u>, *supra,* at 295. Here, petitioner had new counsel appointed on appeal, yet appellate counsel raised no claim of ineffective assistance against trial counsel. Understandably, because far from the record conclusively establishing ineffective assistance, none of petitioner's ineffective assistance of counsel claims have any merit. Accordingly, it was entirely proper for appellate counsel not to raise them on appeal and he cannot be found ineffective for not doing so.

### IV. <u>Recommendation</u>

For the reasons stated above, the undersigned recommends that the petitioner's §2255 motion be **DENIED** and **DISMISSED** with prejudice from the docket.

Therefore, petitioner's request for an evidentiary hearing should also be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the report and recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file

objections to this report and recommendation will result in waiver of the right to appeal from a judgment of

this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S.1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: April 25, 2011.

*James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE